1

2

3

4

5

6

7

8                          **UNITED STATES DISTRICT COURT**

9                          **EASTERN DISTRICT OF CALIFORNIA**

10

11   UNITED STATES OF AMERICA,          )   Case No.: 1:18-cr-00261 JLT SKO
                                        )
12                 Plaintiff,           )   ORDER DENYING DEFENDANT'S MOTION
                                        )   FOR COMPASSIONATE RELEASE PURSUANT
13          v.                          )   TO 18 U.S.C. § 3582(c)(1)(A)
                                        )
14   LORENE DEANDA,                     )
                                        )   (Doc. 106)
15                 Defendant.           )
                                        )
16   _____ )

17          Lorene DeAnda is a federal prisoner moving for compassionate release under 18 U.S.C.

18   § 3582(c)(1)(A)(i) based on her extraordinary family and medical circumstances. (Doc. 106.) The

19   Government opposes the motion, contending that Defendant does not satisfy the "extraordinary and

20   compelling" standard applicable to her request. (*See* Doc. 113.) Defendant filed a reply on June 26,

21   2025. (Doc. 120.) For the reasons set forth below, Defendant's motion is **DENIED**.

22   **I.      Background**

23          On April 3, 2023, Defendant pled guilty to mail fraud, in violation of 18 U.S.C. § 1341. (Docs.

24   62, 63.) In advance of sentencing, the probation officer filed a Presentence Investigation Report. (PSR,

25   Doc. 72.) The PSR assigned a total offense level of 26, which included a two-level upward adjustment

26   under U.S.S.G. § 3A1.1(b)(1) and a two-level upward adjustment under U.S.S.G. § 3A1.1(b)(2)

27   because Defendant's offense involved vulnerable victims. (*See* Doc. 72, PSR ¶¶ 28-29, 36.) Defendant

28   was assessed 0 criminal history points, which resulted in a criminal history score of 0 and placed her

1  in criminal history category I. (PSR ¶¶ 42-44.) Based on Defendant's offense level and criminal
2  history category, the advisory sentencing guideline range called for a term of imprisonment of 63 to 78
3  months. (PSR ¶ 76.)

4       At the sentencing hearing, the Court adopted the findings in the PSR without change.
5  (Statement of Reasons (SOR) at 1.) After considering the sentencing factors set forth at 18 U.S.C.
6  § 3553(a), the Court varied below the guideline range based on Defendant's difficult upbringing and to
7  avoid unwarranted sentencing disparities among co-defendants. (SOR at 3.) The Court sentenced
8  Defendant to 37 months in custody, followed by a 36-month term of supervised release, a $100 special
9  assessment, and $549,142.43 in restitution. (Doc. 80; Doc. 82 at 2-3, 6.) On June 5, 2025, Defendant
10 was transferred to Turning Point of Central California, a residential re-entry center (halfway house) in
11 Fresno, California. (Doc. 120 at 1.) Her projected release date is May 24, 2026. *Find an inmate*,
12 FEDERAL BUREAU OF PRISONS, https://www.bop.gov/inmateloc/ (last accessed August 1, 2025).

13 **II.    Legal Standard**

14      A court generally "may not modify a term of imprisonment once it has been imposed." 18
15 U.S.C. § 3582(c); *see also Dillon v. United States*, 560 U.S. 817, 824 (2010) ("'[A] judgment of
16 conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not be
17 modified by a district court except in limited circumstances."). Those limited circumstances include
18 compassionate release in extraordinary cases. *See United States v. Holden*, 452 F. Supp. 3d 964, 968
19 (D. Or. 2020). Under the First Step Act (FSA) of 2018, imprisoned defendants may bring their own
20 motions for compassionate release in the district court. 18 U.S.C. § 3582(c)(1)(A). A defendant bears
21 the burden of "establish[ing] his eligibility for compassionate release." *United States v. Wright*, 46
22 F.4th 938, 951 (9th Cir. 2022).

23      In analyzing whether a defendant is entitled to compassionate release under § 3582(c)(1)(A)(i),
24 the court must determine whether a defendant has satisfied three requirements:

25          First, as a threshold matter, the statute requires defendants to exhaust
            administrative remedies. 18 U.S.C. § 3582(c)(1)(A). Second, a district
26          court may grant compassionate release only if "extraordinary and
            compelling reasons warrant such a reduction" and "that such reduction is
27          consistent with applicable policy statements issued by the Sentencing
            Commission.["] *Id.* Third, the district court must also consider "the
28          factors set forth in Section 3553(a) to the extent that they are
            applicable." *Id.*

2

1  *United States v. Rodriguez*, 424 F. Supp. 3d 674, 680 (N.D. Cal. 2019); *see also United States v.*

2  *Ramirez-Suarez*, 2020 WL 3869181, at *2 (N.D. Cal. July 9, 2020); *United States v. Trent*, 2020 WL

3  1812242, at *2 (N.D. Cal. Apr. 9, 2020) (noting that as to the third factor under 18 U.S.C.

4  § 3582(c)(1)(A), release must be "consistent with" the sentencing factors set forth in § 3553(a)).

5  **III.    Discussion and Analysis**

6      **A.    Administrative exhaustion**

7          Section 3582(c) permits a defendant to apply to a federal district court for a sentence

8  modification only "after the defendant has fully exhausted all administrative rights to appeal a failure

9  of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the

10  receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" 18 U.S.C.

11  § 3582(c)(1)(A).[1] Defendant presented her administrative request for compassionate release, by and

12  through counsel, in a letter to the warden at Federal Correctional Institution, Victorville (FCI

13  Victorville Medium I) on December 11, 2024. (Sealed Doc. 110 at 2-15.) This request was denied on

14  January 23, 2025. (Doc. 106-2.) The Government concedes that Defendant has exhausted her

15  administrative remedies. (*See* Doc. 113 at 5.)

16      **B.    Extraordinary and compelling reasons**

17          The court may reduce a term of imprisonment, after considering the applicable § 3553

18  sentencing factors, "if it finds that … extraordinary and compelling reasons warrant such a reduction

19  … and that such a reduction is consistent with applicable policy statements issued by the Sentencing

20  Commission." 18 U.S.C. § 3582(c)(1)(A). The Sentencing Commission has issued an amended policy

21  statement outlining the circumstances under which "extraordinary and compelling reasons" exist to

22  warrant compassionate release, including a defendant's medical circumstances, age and other related

23  factors, family circumstances, victimization, unusually long sentence, or "other reasons." U.S.S.G. §

24

25  [1] If the BOP denies a defendant's request within 30 days of receipt of such a request, to exhaust his
administrative remedies, the defendant must appeal that denial to the BOP's "Regional Director within 20
26  calendar days of the date the Warden signed the response." 28 C.F.R. § 542.15(a). If the Regional Director
denies the defendant's administrative appeal, the defendant must appeal again to the BOP's "General Counsel
27  within 30 calendar days of the date the Regional Director signed." *Id.* "Appeal to the General Counsel is the
final administrative appeal." *Id.* When the final administrative appeal is resolved, the defendant has "fully
28  exhausted all administrative rights." *See* 18 U.S.C. § 3582(c)(1)(A).

1   1B1.13(b)(1)-(6) (last amended Nov. 1, 2023).[2] The Court refers to the Sentencing Commission's

2   policy statement for guidance. *See United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021) (per

3   curiam) ("The Sentencing Commission's statements in U.S.S.G. § 1B1.13 may inform a district

4   court's discretion for § 3582(c)(1)(A) motions filed by a defendant, but they are not binding."); *see*

5   *also United States v. Gonzalez*, 2024 WL 705711, at *2 (9th Cir. Feb. 21, 2024) (citing *Aruda*, 993

6   F.3d at 802).

7       Defendant contends that her family and medical circumstances, taken alone or collectively,

8   constitute extraordinary and compelling reasons warranting compassionate release. The Court will

9   address each basis individually before turning to the collective impact of her circumstances.

10          1.      Family circumstances

11      Defendant argues that she qualifies for relief under 18 U.S.C. § 3582(c)(1)(A) and a time-

12  served sentence based on her need to help care for her grandchildren and other family members.[3]

13  (Doc. 106 at 6-7.)

14      The U.S. Sentencing Guidelines establish that extraordinary and compelling reasons may exist

15  for compassionate release based on the following family circumstances:

16          **(A)** The death or incapacitation of the caregiver of the defendant's minor
17          child or the defendant's child who is 18 years of age or older and
            incapable of self-care because of a mental or physical disability or a
18          medical condition.

19  _____

20  [2] The Sentencing Guidelines also require that to be granted a sentence reduction under 18 U.S.C.
    § 3582(c)(1)(A), the defendant must not pose "a danger to the safety of any other person or to the community,
21  as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(a)(2).

    [3] Though Defendant asserts that other adult family members need her care, but she does not specifically identify
22  them in her motion. (*See* Doc. 106 at 6-7 ["In addition, adult members of [Defendant's] immediate family have
    various health conditions that have worsened since [Defendant's] surrender to BOP in April[] 2024, and her
23  care is needed for them too."].) Instead, she directs the Court to her administrative request to the warden and
    supporting declarations. (*Id.*, citing Sealed Doc. 110 at 3-11, 16-24, 49-69.) Defendant is admonished that is not
24  the Court's duty to patch together her family's history to try to comprehend the circumstances upon which she
    relies. Nonetheless, the Court will consider these documents insofar as they provide pertinent family
25  background relevant to the Court's discussion. To this end, the Court will address Defendant's asserted need to
    care for her grandchildren, sister, son, and nephew. The Court declines, however, to consider previous
26  arguments that Defendant does not assert in the instant motion, as well as arguments that are not properly raised
    on a motion for compassionate release, such as Defendant's criticism of the warden's response letter. (*See* Doc.
27  106 at 7-11.) *See Williams v. Cnty. of Alameda*, 26 F. Supp. 3d 925, 947 (N.D. Cal. 2014) ("This Court only
    considers arguments that are specifically and distinctively raised by the parties in their briefs.") (citing *Indep.*
28  *Towers of Washington v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003)).

**(B)** The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

**(C)** The incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent.

**(D)** The defendant establishes that circumstances similar to those listed in paragraphs (3)(A) through (3)(C) exist involving any other immediate family member or an individual whose relationship with the defendant is similar in kind to that of an immediate family member, when the defendant would be the *only* available caregiver for such family member or individual. For purposes of this provision, 'immediate family member' refers to any of the individuals listed in paragraphs (3)(A) through (3)(C) as well as a grandchild, grandparent, or sibling of the defendant.

U.S.S.G. § 1B1.13(b)(3)(A)-(D) (emphasis added).

Invoking § 1B1.13(b)(3)(D), Defendant argues that her absence has created an extraordinary hardship on her "close knit" family, who has "depended on her daily presence for care of her four grandchildren, all age 10 and under, three of whom have been diagnosed on the autism spectrum and require specialized care." (Doc. 106 at 6.)[4] She claims that no other family member can "fulfill the important role" she occupied in her grandchildren's lives because "every able adult in the family was already fully consumed with full-time employment, childcare, and care of disabled adults in [Defendant's] immediate family." (*Id.*) Defendant asserts that in her absence, the adult family members are "totally stressed and tapped out" and "[t]he whole family is bursting at the seams." (*Id.* at 2.)

a.    *Defendant's family history*



1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

25  ///

**b.**    *Defendant's grandchildren*

Defendant has not established extraordinary or compelling reasons based on her need to care for her grandchildren. █████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████████

█████████████████████████████████████████

████████████████████████████████████████████

██████████████████

**c.**    *Defendant's sister*

Defendant also has not shown that extraordinary and compelling circumstances exist based on her need to care for her sister, ██████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████

█████████████████████████████████████████████

███████████████████████████████████████████████

████

████████████████████████████████████████

█████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████

1

2

3

4

5

6                  *d.      Defendant's son and nephew*



7

8

9

10

11

12

13

14

15

16

17

18

19  That Defendant cannot offer her loved ones a lending hand or a listening ear does not amount to

20  extraordinary or compelling circumstances.

21          In sum, the Court empathizes with Defendant's family members and appreciates the difficulties

22  they have endured, and will continue to endure, due to Defendant's conduct. "Unfortunately, 'when

23  someone commits a serious crime and is caught, the felon's family members are almost always among

24  the primary victims of the result of his misconduct and suffer both financially and

25  psychologically.'" *United States v. Jackson*, 2022 WL 1182696, at *4 (E.D. Wash. Apr. 20, 2022)

26  (quoting *United States v. Henareh*, 2021 WL 119016, at *4 (S.D.N.Y. Jan. 13, 2021)). Defendant has

27  failed to show that her family circumstances provide extraordinary and compelling reasons to grant

28  compassionate release. To the contrary, there are few families that easily navigate a loved one's

incarceration. This circumstances, rather than being extraordinary, is all too commonplace.

### 2. Medical circumstances

Extraordinary and compelling reasons may exist for compassionate release based on a defendant's medical circumstances, including where "[t]he defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death." U.S.S.G. § 1B1.13(b)(1)(C).

Defendant asserts that she suffers from "recurring skin cancer for which she needs medical care that is not available at BOP, and which presents high risk of developing quickly into an aggressive malignancy." (Doc. 106 at 10.) Defendant claims that prior to her surrender, she was prescribed a topical chemotherapy treatment, Efudex, for a lesion on her right cheek, which "requires monitoring by the doctor over several weeks." (*Id.*) She claims her requests for this treatment were denied. (*Id.*) However, this contention is unsupported by the record.

Though defense counsel states in her declaration that Defendant requested the treatment after her self-surrender, BOP notes from Defendant's intake health screening on April 22, 2024 represent that she had no current or past treatment for carcinoma or any other health issues. (*See* Sealed Doc. 117 at 34, 36.) Defendant's known medication list, including over-the-counter items, was also compiled during her intake screening. Nine prescription orders were placed that day, none of which was Efudex. (*See id.* at 36-37.) Defendant's historical medication summary reflects prescribed medications from January 1, 2024 to January 1, 2025, but this list does not include Efudex. (*See id.* at 76-79.) Finally, none of Defendant's "Inmate Request to Staff" forms demonstrate that Defendant requested this treatment or otherwise communicated to BOP staff that prior to her surrender, she had been prescribed Efudex or that she had not yet begun treatment. (*See* Sealed Doc. 110 at 83-86.) Therefore, the fact that Defendant "thought she would get this treatment at BOP," is immaterial when the record does not reflect that BOP was made aware of this need. (Doc. 106 at 10.)

The Court also observes that Defendant had every opportunity to begin—and perhaps complete—her Efudex treatment prior to surrendering on April 22, 2024. According to defense counsel, Defendant "held off on her Efudex treatment because she knew that she would not have time to complete it before her surrender to BOP on April 22, 2024." (Doc. 106 at 18, Declaration of

Meredith Fahn ¶ 4.) However, when University of California, San Francisco dermatologist Dr. Cory Kosche prescribed the Efudex treatment on March 28, 2024, he instructed Defendant to apply it twice daily for 2-4 weeks until a full rash had developed, and if it developed earlier, to keep applying until the 2-week point. (Sealed Doc. 110 at 82.) She had approximately 3 weeks and 3 days in which to proceed with treatment. Instead, she chose not to.

The single case Defendant relies on to support her position is distinguishable. (Doc. 106 at 11, citing *United States v. Smith*, 2021 WL 1061165 (E.D. Cal. Mar. 19, 2021).) First, *Smith* was decided in 2021, prior to the addition of § 1B1.13(b)(1)(C), the subcategory invoked by Defendant.[9] More importantly, her synopsis of the case as one "where this Court granted compassionate release for a defendant diagnosed with skin cancer who was not receiving the specialized care he needed at a BOP facility" is oversimplified. (Doc. 106 at 11.) Rather, defendant Smith sought compassionate release on the grounds that he was more vulnerable to severe illness from the COVID-19 virus due to his skin cancer diagnosis and the COVID-19 outbreaks at his BOP facility. *Smith,* 2021 WL 1061165, at *1. Smith also had a confirmed diagnosis of skin cancer, and his BOP medical provider had "specifically recommended that Smith have a follow-up consult with a dermatologist within a relatively tight time frame following a positive biopsy," which had not yet occurred at the time the court's decision issued. *Id.*, at *3-4. None of these circumstances are present in Defendant's case.

Moreover, even assuming Defendant requires "long-term or specialized medical care," and that she "is at risk of serious deterioration in health or death" without it, she has not demonstrated that this care is not being provided. While it can arguably be said that Defendant's concerns went unanswered while she was incarcerated at FCI Victorville,[10] she has since been transferred to a halfway house. (*See*

---

[9] Amendment 814 to § 1B1.13, effective November 1, 2023, expanded the list of specified "extraordinary and compelling reasons" for compassionate release. *See Amendments to the Sentencing Guidelines*, U.S. Sent. Comm'n, Nov. 1, 2023, https://www.ussc.gov/sites/default/files/pdf/amendment-process/official-text-amendments/202305_Amendments.pdf. This included, *inter alia*, the addition of two new subcategories, (C) and (D), to the "Medical Circumstances of the Defendant" ground for relief. *Id.* at 8-9.

[10] Defendant has submitted to the Court inmate requestss, dated September 26, 2024, October 3, 2024, and November 12, 2024, expressing her concern and requesting care for/evaluation of her new lesions. (*See* Sealed Doc. 110 at 84-86.)[10] She claims that she never received a response from BOP staff. However, each form is generically addressed to "Medical" and does not contain disposition notes, a staff member signature/date, or any other indication of when, or by whom, the form was received. Thus, because the Court cannot determine on the present record whether the BOP ever received Defendant's requests, it cannot say for certain that the BOP

12

Def. Decl. ¶ 2.)

In a declaration filed with her reply brief, Defendant represents that shortly after she was transferred to Turning Point on June 5, 2025, her case manager authorized a medical appointment with a local doctor regarding her skin cancer concerns. (*See* Def. Decl. ¶¶ 5, 12.) On June 20, 2025, she was seen by Dr. George Neves, who ordered lab tests and assured Defendant that although he would not refer her to her treating provider, UCSF, he would take photographs of her lesions at her next appointment and send them to a dermatologist for review, although the dermatologist follow-up appointment would be at least four months later. (Def. Decl. ¶ 12.) Therefore, it appears from the record that Defendant is receiving the care she needs.

Defendant appears to take issue with the following: (1) that Dr. Neves is a family doctor rather than a dermatologist; (2) that Dr. Neves did not get up from his chair or take pictures of Defendant at the appointment; (3) that he questioned her in a manner that made her feel embarrassed and humiliated; (4) that he would not refer her to UCSF; and (5) that it will take at least four months to get a dermatology appointment after Defendant is referred. (*See id*.) Though the Court does not condone Dr. Neves' conduct, none of these circumstances warrant compassionate release.

Defendant points to no authority demonstrating that Dr. Neves' practices, such as not referring an inmate patient to an out-of-region medical specialist, are unreasonable. Indeed, it is not uncommon practice to require a patient to be seen by his or her general practitioner before being referred to a specialist. Unfortunately, waiting months for an appointment with a specialist is also not uncommon, although the Court is confident that if Defendant's lesions were to raise sufficient concern for the dermatologist, her treatment would be prioritized consistent with that concern. In any event, a motion for compassionate release is generally not an appropriate avenue to challenge a doctor's bedside manner.

Defendant also complains that while at FCI Victorville, she requested to be placed at a halfway house in Northern California to pursue treatment at UCSF but was instead sent to Fresno. (Def. Decl. ¶ 11.) She reports that she has a scheduled appointment with UCSF on August 26, 2025, but was

ignored them.

1    informed by her Fresno case manager that she would not be sent to UCSF because it is "outside the

2    region." (*Id.*) She then requested to be transferred to a region that encompasses UCSF, to which her

3    case manager responded that "in 27 years of working at Turning Point, he ha[d] never seen a transfer."

4    (*Id.*)

5          The Court lacks authority to consider Defendant's complaints regarding her place of

6    confinement. Rather, the BOP "shall designate the place of the prisoner's imprisonment, and … may

7    at any time … direct the transfer of a prisoner from one penal or correctional facility to another." 18

8    U.S.C. § 3621(b). Furthermore, the BOP's designation of an inmate's place of confinement "is not

9    reviewable by any court." *Id.; see also United States v. Ceballos,* 671 F.3d 852, 855 (9th Cir. 2011)

10   (quoting *United States v. Dragna,* 746 F.2d 457, 458 (9th Cir. 1984)) ("[T]he court has no jurisdiction

11   to select the place where the sentence will be served. Authority to determine place of confinement

12   resides in the executive branch of government and is delegated to the Bureau of Prisons.").

13         In sum, Defendant has failed to meet her burden of demonstrating that her family or medical

14   circumstances present extraordinary and compelling reasons warranting compassionate release.

15   U.S.S.G. § 1B1.13(b)(1), (3). The Court therefore declines to exercise its discretion to grant the relief

16   Defendant seeks. Accordingly, her motion is denied.

17   **IV.    Conclusion and Order**

18         Based upon the foregoing, Defendant's motion for compassionate release pursuant to 18

19   U.S.C. § 3582(c)(1)(A)(i), (Doc. 106), is **DENIED**.

20

21   IT IS SO ORDERED.

22      Dated:   __**August 1, 2025**__

23                                              UNITED STATES DISTRICT JUDGE

24

25

26

27

28